**In re 'CALDWELL'S ESTATE.**
No. 81799.
County Judges' Court, Dade County.
February 27, 1970.

Smith, Mandler, Smith & Parker, Miami Beach, for two of the half sisters and the half brother.

Stenstrom, Davis & McIntosh, Sanford, Cunningham & Cunningham, West Palm Beach, and Matthews, Braynon & Mapp, Miami, for the next of kin.

FRANK B. DOWLING, County Judge.

*Order determining heirs:* William T. Moore, Esquire, the duly appointed, qualified and acting administrator of the estate of Hortense Caldwell, deceased, has filed his petition for determination of heirs as provided in §734.25, Florida Statutes. Petitioner alleges under oath that he has made diligent search and inquiry and has listed those persons known to him claiming to be heirs of the decedent. The petition further recites that there may be other claimants unknown to the administrator, some of whom may be minors or incompetents. He prays for an order authorizing publication of citation to all known and unknown heirs of the decedent and the appointment of a guardian ad litem to represent and to protect the interest, if any, of all persons unknown, including the rights of unknown minors and incompetents.

Robert G. Lilly, Esquire, a practicing attorney of this bar, has been appointed as guardian ad litem in this cause for unknown heirs of the decedent, including all minors and incompetents and persons in the military service of the United States who are or may be protected by the provisions of the Soldiers and Sailors Civil Relief Act. Said guardian ad litem has filed his oath and qualified as such and appeared in this cause in that capacity.

Due citation has been published as required by law to all known and unknown heirs having or claiming to have an interest in the above captioned estate, notifying them that the petition for determination of heirs or beneficiaries has been filed and requiring the filing of their answers and written defenses to the petition.

Upon the filing of answers by various claimants as heirs at law of the decedent, Hortense Caldwell, this cause came on for hearing, after notice to all interested parties, for the determination of heirs or beneficiaries, at which time evidence was offered in behalf of the claimants, both oral and documentary, and the court having considered the same, makes the following findings of fact —

The decedent, Hortense Caldwell, was born on January 28, 1909, the lawful child of Henry Caldwell and Parthenia Caldwell, his wife. She was the only child of this marriage. She died in Miami, Dade County, Forida on January 4, 1969 leaving a substantial estate. At the time of her death, Hortense Caldwell was unmarried and without lawful issue or descendants of lawful issue. Her father, Henry Caldwell, and her mother, Parthenia Caldwell, predeceased her. She had no lawful brothers or sisters, either living or deceased.

Those claiming to be the heirs and beneficiaries of Hortense Caldwell and her estate are as follows — Sarah Ford Tooley, Dennis C. Ford, William Lewis, Annie Lee Johnson, Geraldine Davis, Nellie Mae Borum, Andrew Caldwell, Jr., Jacqueline Shannon, Fred Henry Caldwell, Thelma Caldwell Miller, Philip W. Caldwell, Geraldine C. Nunn, and Joseph Caldwell. All claim to be lawful next of kin of the decedent, Hortense Caldwell, through lawful relationship to decedent's father, Henry Caldwell. They are represented in this cause by Stenstrom, Davis & McIntosh, attorneys at law.

Maude Comer, Ethel Jackson, and Eva M. Wright all claim to be lawful next of kin of the decedent, Hortense Caldwell, through lawful relationship to her mother, Parthenia Caldwell. They are represented by the law firms of Cunningham & Cunningham, and Matthews, Braynon & Mapp.

Edith Caldwell, Howard Caldwell, and Eunice Caldwell claim to be half brother and half sisters of the decedent, Hortense Caldwell, as children of Henry Caldwell and one Louise Young. They are represented by the law firm of Smith, Mandler, Smith and Parker.

It is likewise alleged and admitted by the evidence that Ethel Caldwell is a blood half sister of the decedent, Hortense Caldwell, as the child of Henry Caldwell and one Minnie White. Ethel Caldwell is not represented by counsel of record.

The evidence before the court discloses that Henry Caldwell and Parthenia Caldwell were lawfully married and of this union the decedent, Hortense Caldwell, was the only lawful issue. While Henry was married to Parthenia, he cohabited with one Louise Young and they had born to them Eunice Caldwell, Edith Caldwell, and Howard Caldwell. At or about the same period of time, Henry Caldwell is admitted to have cohabited with one Minnie White and there was born to them one child, Ethel Caldwell. It is admitted that these four children of Henry Caldwell were born out of wedlock, were illegitimate children, but are nevertheless by blood half sisters and half brother of the decedent, Hortense Caldwell.

Those claiming through the mother and father, respectively, of the decedent, Hortense Caldwell, assert that they are the only lawful next of kin of the decedent possessed of inheritable blood and are, therefore, entitled to the entire estate of the decedent to the exclusion of the above named half sisters and half brother of the decedent who are of illegitimate birth and, as they claim, are therefore barred by the statutes of the state of Florida from inheriting from their half sister through intestacy.

The half brother and half sisters of the decedent, born of Louise Young and the decedent's father, Henry Caldwell, admit that Ethel Caldwell was the child of Henry Caldwell and Minnie White, and claim the entire estate of the decedent under §731.23, Florida Statutes, the same being the law of descent and distribution of the state of Florida, asserting that they are half brother and half sisters of the decedent and, therefore, the nearest blood kin and relations of the decedent, notwithstanding their admitted illegitimacy.

Under the English common law, a bastard could not be the heir of anyone, and neither could he have heirs except the heirs of his own body; being nullius filius, he was considered to be kin to nobody and to have no ancestor from whom any inheritable blood could be derived, and in this country, except for one jurisdiction (Connecticut), it is generally recognized that in the absence of any statute conferring rights of inheritance upon them, illegitimate children are without capacity to inherit from or through either parent. Common law disabilities of the illegitimate are relaxed or removed only to the extent that the legislature has seen fit to remove them, and no rights of inheritance can exist in any case which is not within the statute. 10 Am. Jur. 2d §146, p. 948.

It is elementary that the legislatures of the various states may prescribe rules of descent of property for persons dying intestate within the state. Florida has passed such a statute, §731.23, Florida Statutes, providing as follows —

> The real and personal property of an intestate shall descend and be distributed as follows:
>
> (1) To the surviving spouse and lineal descendants, the surviving spouse taking the same as if he or she were one of the children.
>
> (2) If there are no lineal descendants, to the surviving spouse.
>
> (3) If there is no surviving spouse, to the lineal descendants.
>
> (4) If there is none of the foregoing, to the father and mother equally, or to the survivor of them.
>
> (5) If there is none of the foregoing, to the brothers and sisters and the descendants of deceased brothers and sisters.
>
> (6) If there is none of the foregoing, the estate shall be divided into moieties, one of which shall go to the paternal and the other to the maternal kindred in the following course:
>
>> (a) To the grandfather and grandmother equally, or to the survivor of them.
>>
>> (b) If there is no grandfather or grandmother, to the uncles and aunts and the descendants of such of them as may be deceased.

The state has also enacted a statutory provision for inheritance by those of the half blood. In §731.24, Florida Statutes, it is provided —

> In the cases before mentioned, where the estate is directed to pass to the collateral kindred of the intestate, if part of such collateral kindred are of the whole blood to the intestate and the other part of the half blood only, those of the half blood shall inherit only half as much as those of the whole blood; but, if all are of the half blood, they shall have whole portions.

After the admission of the state of Florida into the union of the United States of America in 1845, there was enacted a statute in this state now appearing as §2.01 which declared the common law and statute laws of England to be of full force and effect in this state in the following language —

> 2.01. *Common law and certain statutes declared in force* —
>
> The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the fourth day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the constitution and laws of the United States and the acts of the legislature of this state.

From the foregoing it is observed that by statute the state of Florida has embraced the common law of England as the law of this state except where it is changed by statute of this state or where it may be inconsistent with the constitution and laws of the United States and the state of Florida. Florida proceeded to change the common law of England relating to illegitimates from the status of a non person, and the heir and child of no one, to provide in §731.29, Florida Statutes, as follows —

> *Illegitimate child as heir.*
>
> (1) Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father. Such illegitimate child shall inherit from his mother and also, when so recognized, from his father, in the same manner as if the child had been born in lawful wedlock. However, such illegitimate child does not represent his father or mother by inheriting any part of the estate of the parents' kindred, either lineal or collateral, unless his parents have inter-married, in which event such illegitimate child shall be deemed legitimate for all purposes.
>
> (2) If any illegitimate child dies intestate, without lawful issue or spouse, his estate shall descend to his mother, or, in case of her decease, to her heirs at law.

It has been uniformly held throughout the states that laws of descent and distribution in intestate estates refer only to those of lawful kinship and having inheritable blood. Statutes of descent and distribution, such as §731.23, above quoted, which provide generally for the distribution of intestate property of a deceased person among certain classes of persons without mentioning illegitimates, are construed to refer to legitimates only, unless there is something in the language of the particular statute which indicates a different intention on the part of the legislature. 48 A.L.R. 2d 764, §3 (c). It has been held that a statute giving an estate to the brothers and sisters of an intestate dying without issue or father or mother, and providing that kindred of the half blood shall inherit equally with those of the whole blood, does not include descendants of illegitimate brothers and sisters. Truelove v. Truelove, 172 Ind. 441; 88 N.E. 516 - 1018.

The Florida Supreme Court in Williams v. Kimball, 16 So. 783, in considering the effect of a statute of this state authorizing an illegitimate to inherit from his mother, held as follows —

> The construction given generally by the courts to acts of this kind has been a strict one. In such cases it has been held that a bastard might inherit from his mother, or his mother from him; but there the inheritable blood became dammed up in his veins, and its current could flow no further. It did not extend to collateral kindred. * * * [The Florida Supreme Court there pointed out that] . . . the very language of the statute had been construed by the Supreme Court of the United States in the case of Stevenson's Heirs v. Sullivant, 5 Wheat 207, text 260, where the court said as follows:
>
> > "In the construction of this section it must never be lost sight of that the appellants are to be considered as bastards, liable to all the disabilities to which the common law subjects them as such, except those from which the statute itself exempts them. Though illegitimate they may inherit and transmit inheritance, on the part of the mother, in like manner as if they had been lawfully begotten of the mother. As bastards they were incapable of inheriting the estate of their mother, notwithstanding they were the innocent offspring of her incontinence, and were, therefore, in the view of the legislature, and consonant to the feelings of nature, justly entitled to be provided for out of such property as she might leave undisposed of at her death. The current of inheritable blood was stopped in its passage from and through the mother, so as to prevent the descent of the mother's property and of the property of her ancestors either to her own illegitimate children, or to their legitimate offspring. The object of the legislature would seem to have been to remove this impediment to the transmission of inheritable blood from the bastard, in the descending line, and to give him a

capacity to inherit in the ascending line, and through his mother. But although her bastard children are, in these respects, quasi legitimate, they are nevertheless, in all others, bastards, and as such they have and can have neither father, brothers, nor sisters. They cannot therefore inherit from Richard Stevenson, because, in contemplation of law, he is not their brother."

In all the statute law of the state of Florida, only §731.29, confers any right of inheritance upon an illegitimate. (See also §731.32, relating to persons of color.)

§731.29 provides that an illegitimate child shall inherit from his mother and also, when recognized in writing before a witness to be his child, from his father, in the same manner as if the child had been born in lawful wedlock. Eunice, Howard, and Edith have been recognized in writing by Henry Caldwell as his children and they could inherit from him. However, the statute further restricts the right of inheritance by an illegitimate child by providing —

However, such illegitimate child does not represent his father or mother by inheriting any part of the estate of the parents' kindred, either lineal or collateral, unless his parents have intermarried.

Hortense Caldwell, the decedent in this estate, is the lineal kindred of Henry Caldwell, but this restrictive provision of the statute would prevent her half brother and sisters from inheriting any part of her estate by representation through their common father.

Under §731.23 all lineal descendants are heirs at law of their intestate mother or father. If the law of descent and distribution of an intestate's estate as provided in §731.23 was not restricted to legitimate and lawful next of kin, there would have been no reason or purpose in the legislature enacting §731.29 providing for heirship of an illegitimate from the mother and the father under certain circumstances. It was clearly the intent of the legislature to change the harsh rule of the common law excluding bastards from inheritance but only to the extent as provided in §731.29.

The foregoing has been recognized and held to be the law of this state for over a century and thus would exclude the illegitimate children of Henry Caldwell from any right of inheritance in the estate of their intestate half sister, Hortense Caldwell. This would require that the court determine that her collateral next of kin through lawful blood lines possess the only inheritable blood and have the sole and exclusive right of inheritance. However, this easily reached conclusion must be reconsidered and examined in the light of recent decisions of the Supreme Court of the United States of America and of other states. Looking at the fourteenth

amendment to the constitution of the United States and section 1 thereof, we find that the same provides as follows —

> SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Under the declaration of rights of the constitution of Florida, it is provided in section 1 that all men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety. That the legislature may prescribe rules of descent of property for persons dying intestate within this state as heretofore mentioned is undenied. The basic question is whether it may do so in such an arbitrary manner that it offends the respective provisions of the state and federal constitutions which guarantee to every citizen the equal protection of the laws.

In prescribing rules of descent of property for persons dying intestate and setting forth those classes of persons who may take under certain circumstances, we note that the federal and state constitutions do not prohibit or prevent classification, provided such classification is reasonable for the purpose of the legislation. The classification must not be arbitrary and shall not constitute a subterfuge to shield one class against the other, or to burden another class or to oppress anyone unlawfully in its administration. A proper classification for legislative purposes must embrace all who naturally belong to the class. Legislation cannot arbitrarily divide a class into two parts and constitute a different rule of law governing each of the parts. Classification must also rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed.

In this case the legislature of the state of Florida, in its law of descent and distribution, has provided that half brothers and half sisters may inherit from their intestate half sister in the absence of surviving spouse, lineal descendants, and mother and father. But this is provided that they are legitimate and possess inheritable blood. If they are illegitimate, they are barred from such inheritance. Thus we see that persons of the same class, namely, half brothers and half sisters, are divided arbitrarily into legitimate and illegitimate for the purpose of inheritance without regard to the fact that they are of equal next of blood kin.

It was long since held in the case of Carrington v. Rash, 38 U. S. 89, 91, 13 L. Ed. 2d 675 that the privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state may direct, or upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals in violation of the federal constitution.

Recently, and more to the point of the facts presented here, in the case of Levy v. Louisiana, 391 U. S. 68, 70, 88 S. Ct. 1509, 1510-1512, 20 L. Ed. 2d 436 (1968), the Supreme Court of the United States declared that a statute which denied to illegitimate children the right to recover for wrongful death of their mother, on whom they were dependent, constituted invidious discrimination against them and thus was in violation of the equal protection clause of the fourteenth amendment to the United States Constitution. In that case, Justice Douglas, speaking for the majority, said —

> We start from the premise that illegitimate children are not "nonpersons." They are humans, live and have their being. They are clearly "persons" within the meaning of the Equal Protection Clause of the fourteenth amendment. * * *

> When the child's claim of damage for loss of his mother is in issue, why, in terms of "equal protection," should the tortfeasors go free merely because the child is illegitimate? Why should the illegitimate child be denied rights merely because of his birth out of wedlock? He certainly is subject to all the responsibilities of a citizen, including the payment of taxes and conscription under the Selective Service Act. How under our constitutional regime can he be denied correlative rights which other citizens enjoy? * * *

> We conclude that it is invidious to discriminate against them when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done the mother.

A case almost identical with the one under consideration is that of In re Estate of Jensen decided by the Supreme Court of North Dakota on November 4, 1968, 162 N. W. 2d 861. In the Jensen case, the question was the distribution of the estate of Chris E. Jensen. The disputants on one side were the legitimate children of Mr. Jensen, and on the other side were the illegitimate children of Mr. Jensen.

The lower court held that the North Dakota statute prohibited the illegitimate children from inheriting from the deceased and an order was entered providing that the legitimate children were the only heirs at law of the deceased Jensen who died intestate. On appeal from an order denying the motion to vacate that judgment the cause was reversed and the final decision was to the effect that the illegitimate children should share with the legitimate children

in the distribution of the estate. The statute in question in the Jensen case was very similar in form to the statute of this state relating to inheritance by illegitimates which has been quoted above. The North Dakota statute provided —

> Every child born out of wedlock is an heir of the person who in writing signed in the presence of a competent witness acknowledges himself to be the father of such child. In all cases such child is an heir of his mother. He, however, does not represent his father or mother by inheriting any part of the estate of the kindred of his father or mother, either lineal or collateral, unless before his death his parents shall have intermarried and his father after such marriage shall have acknowledged him as his child or adopted him into his family.

The constitutionality of the North Dakota statute was attacked in the Supreme Court of North Dakota on the final appeal as being in violation of section 1 of the fourteenth amendment to the United States Constitution and of the North Dakota Constitution. In commenting, that court observed —

> Applying the reasoning in *Levy*, as no action, conduct, or demeanor of the illegitimate children in the instant case is relevant to their status of illegitimacy, we conclude that the classification for purposes of inheritance contained in Section 56-01-05, which is based on such a status and which results in illegitimate children being disinherited while their legitimate brothers and sisters inherit, is unreasonable.

> Accordingly, considering Section 56-01-05 in light of Section 56-01-06, and in light of the repeal in 1917 of C. L. 1913, Section 5745, the predecessor of Section 56-01-05, and its incredible return to life, we have no hesitance in holding that Section 56-01-05 is unconstitutional as an invidious discrimination against illegitimate children in violation of Section 1 of the fourteenth amendment to the United States Constitution and Section 20 of the North Dakota Constitution. This statute, which punishes innocent children for their parents' transgressions, has no place in our system of government, which has as one of its basic tenets equal protection for all.

The legitimate children of Jensen further contended that even in the event the North Dakota Act complained of was found to be unconstitutional, the illegitimate children would gain no relief therefrom for the reason that the common law would then apply and under the common law the illegitimates would not be entitled to inherit from their father. The same contention may be raised in the instant case when considering the constitutionality of §731.29, Florida Statutes. The North Dakota Court went on to say —

> With it we do not agree. As we have said in a recent decision: "In this state there is no common law in any case in which the law is declared by the Code." Nuelle v. Wells, 154 N. W. 2d 364 (N. D. 1967), Syllabus 1.

> That being the rule, with Section 56-01-05 struck down as being in violation of the equal protection clauses of Section 1 of the fourteenth amendment to the United States Constitution and Section 20 of the North Dakota Constitution, the appellants are entitled to share in the decedent's estate by virtue of Section 56-01-04 (3) and Section 56-01-12, which provide for inheritance without regard to legitimacy.

This court finds that §731.29, Florida Statutes, is unconstitutional and, therefore, null, void and of no force and effect in that the same unjustly and unlawfully discriminates against illegitimate next of kin prohibiting them from enjoying the same rights as legitimate next of kin of the same class in violation of section 1 of the fourteenth amendment to the constitution of the United States and the constitution of the state of Florida.

The common law of England as adopted by §2.01, Florida Statutes, cannot come into force for we have §731.23, Florida Statutes, providing how real and personal property of an intestate shall descend and be distributed without regard to the legitimacy or illegitimacy of the next of kin therein referred to. This latter statute provides that where there is no surviving spouse or lineal descendants and no mother or father, then to the brothers and sisters. §731.24 provides that where the estate is directed to pass to collateral kindred of the intestate, if part of such collateral kindred are of the whole blood to the intestate and the other part of the half blood only, those of the half blood shall inherit only half as much as the whole blood; but, if all are of the half blood, they shall have whole portions.

The determination that §731.23 providing for the descent and distribution of the property of a person dying intestate in this state applies to all persons legitimate or illegitimate who fall within the various classifications, is no bar to the right of any person to execute a valid last will and testament, leaving the testator's estate to those of his choice and to the exclusion of those that he does not wish to benefit therefrom.

The court finds from the evidence in this cause that there are no next of kin of the whole blood entitled to take as an heir or beneficiary of Hortense Caldwell, deceased. The court further finds that Eunice Caldwell, Edith Caldwell, and Ethel Caldwell are half sisters of the deceased and that Howard Caldwell is a half brother of the deceased.

It is therefore ordered and adjudged that the lawful heirs and beneficiaries of the estate of Hortense Caldwell who died intestate are Eunice Caldwell, Edith Caldwell, Ethel Caldwell, and Howard Caldwell, each of whom shall share equally in the distribution of the decedent's estate.